IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE ANTONIO AGUIRRE and MARIA L. AGUIRRE,<br><br>Plaintiffs,<br><br>vs.<br><br>TURNER CONSTRUCTION COMPANY, a corporation, BARTON-MALOW COMPANY, a foreign corporation, KENNY CONSTRUCTION, a corporation, and TBMK, a joint venture,<br><br>Defendants. | No. 05 C 0515<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

This diversity lawsuit arises out of an injury suffered by Jose Aguirre when he fell from a scaffold in May 2003, while he was working on the Soldier Field renovation project in Chicago. At the time of the fall, Mr. Aguirre was employed by A.L.L. Masonry ("A.L.L."), one of the subcontractors working on the project. The general contractor was TBMK, a joint venture consisting of Turner Construction Company, Barton-Malow Company, and Kenny Construction Company.

Plaintiffs (Mr. Aguirre and his wife) sued TBMK on the theory that it was responsible for the alleged design and/or construction defects in the scaffolding, which Mr. Aguirre claimed caused the fall. In earlier proceedings, the district judge then presiding in the case granted summary judgment in favor of TBMK on the ground that as the general contractor, TBMK did not owe a duty to Mr. Aguirre, who was employed by a subcontractor. *Aguirre v. Turner Construction Co.*, No. 05 C 515, 2006 WL 644009 (N.D. Ill. Mar. 9, 2006). On appeal, the Seventh Circuit reversed, holding that plaintiffs were entitled to pursue their claims against defendants both under a negligence theory,

based on Section 414 of the RESTATEMENT (SECOND) OF TORTS, and on a *res ipsa loquitur* theory. *Aguirre v. Turner Construction Co.*, 501 F.3d 825 (7th Cir. 2007).

On remand, the case was reassigned to this Court pursuant to the consent of the parties and 28 U.S.C. § 636, for all further proceedings including the entry of final judgment (doc. ## 115, 117). The jury trial of this case commenced on August 4, 2008. On August 11, 2008, the jury returned a verdict in favor of TBMK and against plaintiffs both on the direct negligence and the *res ipsa loquitur* claims. Plaintiffs have timely filed a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure (doc. # 171), which we now consider.[1]

Granting a new trial is not something to be done lightly. *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2806, AT 74-75 (1995 Ed.). "Only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). "[T]he authority to grant a new trial . . . is confined almost entirely to the exercise of discretion on the part of the trial court." *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir. 1982). In exercising that discretion, a court "will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in

---

[1] TBMK suggests that plaintiffs' motion may be untimely (doc. # 177: Defs.' Response at 8-9). Defendants note that the judgment order (doc. # 163) is dated August 11, 2008, and is noted as "Filed" on that same date. Rule 59(b) states that "[a] motion for a new trial must be filed no later than 10 days after the entry of judgment." TBMK suggests that because plaintiffs' motion for a new trial was filed on August 26, 2008, it may be untimely because that is more than 10 days (excluding weekends, as required by Rule 6(a)(2)) after the date of the judgment order. However, as plaintiffs correctly point out (doc. # 178: Pls.' Reply at 13 and Ex. G), the judgment order was not entered on the docket until August 14, 2008. Under Rule 58(c)(2), it is the entry of the judgment order on the docket that triggers the 10-day time period for filing a motion for a new trial. Plaintiffs' post-trial motion was due by August 28, 2008; thus, the post-trial motion filed on August 26, 2008 is timely.

2

the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

Applying these standards, the Court denies plaintiffs' motion for a new trial. We explain the reasons for this ruling below, addressing plaintiffs' arguments in the order that plaintiffs have presented them.

## I.

Plaintiffs' lead argument is that the jury verdict on the *res ipsa loquitur* theory was against the manifest weight of the evidence (Pls.' Motion at 1-4). Using Illinois pattern instructions (all parties agree that Illinois law governs plaintiffs' substantive claims), the Court instructed the jury that to establish their *res ipsa loquitur* claim, plaintiffs had to prove – among other things – that Mr. Aguirre suffered an injury "from a scaffold which was under defendant's control," and that "in the normal course of events, the injury would not have occurred if the defendant had used ordinary care while the scaffold was under its control" (Jury Instruction No. 14; *see also* Illinois Pattern Jury Instructions ["IPI"] Civil B 22.01). In their post-trial motion, plaintiffs argue that the evidence of TBMK's control was "overwhelming." In addition, plaintiffs argue that the evidence shows that Mr. Aguirre fell because planks that supported him fell, and that two witnesses – Messrs. Gomez and Marino – testified that this kind of event would not happen if a scaffold were constructed with reasonable care. We agree with plaintiffs that there was evidence to support both of these propositions, but disagree that this constituted the sum total of the evidence.

3

## A.

We first consider the issue of control. In so doing, we note that under the Seventh Circuit's decision in this case, control was not an issue with respect to plaintiffs' direct negligence claim. On that point, the Seventh Circuit held that the element of control was established for purposes of plaintiffs' Section 414 negligence theory, stating that TBMK "retained sufficient control over the safety of scaffolding design and construction to give rise to a duty of reasonable care under Section 414 of the *Restatement*." *Aguirre*, 501 F.3d at 831. Accordingly, when instructing the jury with respect to the negligence theory (*see* Jury Instruction No. 20), the Court modified IPI Civil 55.03 to eliminate the need for the jury to determine whether, on the negligence theory, TBMK retained control over the safety of the work.

The Seventh Circuit set forth a different analysis of the control issue for purposes of the *res ipsa loquitur* claim. The Seventh Circuit acknowledged that there was "sufficient evidence" in the appellate record to conclude that "TBMK retained some control over both the design and construction of A.L.L.'s scaffolding." *Aguirre*, 501 F.3d at 831-32. Yet, the Seventh Circuit held that on plaintiffs' *res ipsa loquitur* claim, "there is a genuine issue of material fact as to both elements" – meaning control over the instrumentality causing the injury, and an injury that would not have occurred in the absence of negligence. *Aguirre*, 501 F.3d at 831, 832. That holding makes clear that the evidence the Seventh Circuit held conclusively established control for purposes of plaintiffs' negligence claim nonetheless was insufficient to conclusively establish, as a matter of law, the element of control for the *res ipsa loquitur* claim. Thus, the issue of control for purposes of the *res ipsa loquitur* theory was in play during trial.

We consider it a close question as to whether the trial evidence permitted the jury to find the control element lacking. We do not agree with TBMK that only proof that TBMK had "actual physical control" over the scaffolding would suffice to prove that element (Defs.' Resp. at 3). The commentary to the IPI instruction on *res ipsa loquitur* states that "[i]t is not necessary that the defendant have had actual physical control if the defendant at all relevant times had a duty to maintain or supervise the instrumentality in question." IPI Civil B 22.01 (Comment). To support that statement, the IPI comment cites *Lynch v. Precision Machine Shop*, 443 N.E.2d 569 (Ill. 1982), the same case the Seventh Circuit discussed in explaining the control element under *res ipsa loquitur*. *Aguirre*, 501 F.3d at 831-32.

Yet, by requiring a jury trial that included the control issue, the Seventh Circuit decision established that the evidence of control sufficient to establish that element on the direct negligence claim against TBMK was not enough to establish, as a matter of law, the control element of a *res ipsa loquitur* claim. Something more was needed. And, in reviewing the evidence, we conclude that the jury reasonably could have found that this something more was missing. There was substantial evidence of TBMK's exercise of control in scaffolding design; in how scaffolding would be built; and in inspecting scaffolding to detect deficiencies and to require A.L.L. to correct them. But, plaintiffs did not assert – and offered no evidence to prove – that TBMK exercised control of a particular scaffold on a minute-by-minute basis after the scaffold had been built and was deemed adequate. Nor did plaintiff offer evidence that TBMK had to sign off on each scaffold that was built before A.L.L. could start using it. The jury could have concluded that TBMK did not have "control," in these senses, over the scaffold in question. Thus, we conclude that the jury reasonably could have found that plaintiffs' failed to prove the control element of their *res ipsa loquitur* claim.

5

## B.

We further conclude that the jury reasonably could have found that this was not a situation where the accident would not have occurred if the scaffold had been constructed with reasonable care. On this point, the question is not a close one.

Plaintiffs correctly note that Messrs. Gomez and Marino said that planks would not fall absent negligent construction. But, their testimony in no way stood alone. Based on the testimony of Mr. Hooten, the jury could have concluded that the falling plank did not precede Mr. Aguirre's fall but rather was caused by his fall. Indeed, in their reply brief, plaintiffs concede that Mr. Hooten testified that "Mr. Aguirre fell first and the plank fell second" (Pls.' Reply at 4). Other witnesses testified that a worker may fall from even a properly constructed scaffold under a variety of circumstances. Mr. McDermott testified that there are events that can happen after the construction of the scaffolding (such as contact by some vehicle) that could cause even a properly constructed scaffold to shift. Mr. Cotton testified that negligent actions by a bricklayer may cause the planks to move and a fall to occur, even if the scaffolding was properly constructed in the first instance.

Moreover, Mr. Gomez, whose testimony plaintiffs cite, also testified that he built the scaffolding, believed it to be built properly, and had no concerns about its stability prior to the accident. Other witnesses, such as Mr. Barazza, also testified that the scaffolding was properly constructed.

In deciding the case, it was the province of the jury to sort through this conflicting testimony, to determine credibility, and to reach a verdict. When considering a post-trial motion, it is not the province of this Court to make its own credibility determinations: rather, as plaintiffs themselves recognize, we must "leav[e] issues of credibility and weight of the evidence to the jury." *Thompson*

*v. County of Cook*, 428 F. Supp.2d 807, 812 (N.D. Ill 2006) (cited at Pls.' Motion at 1). We reject plaintiffs' argument that the jury verdict on the *res ipsa loquitur* claim was contrary to the weight of the evidence.

## II.

On June 17, 2008, after full briefing and argument, the Court granted TBMK's motion *in limine* to bar one of plaintiffs' retained experts, Mr. Marino, from expressing the opinion that the absence of a mid-rail in the scaffolding created an unsafe condition that caused or contributed to cause the accident (doc. # 134). On August 4, 2008, the morning that trial commenced, plaintiffs filed a motion to reconsider that ruling (doc. # 139). After reviewing the motion as well as TBMK's response to it, on August 5, 2008, the Court denied the motion (doc. # 145).

Now, in their post-trial motion, plaintiffs argue that the Court erred in excluding this testimony (Pls.' Motion at 4-9). Decisions regarding the admissibility of evidence are within the Court's discretion. *Cerabio L.L.C. v. Wright Medical Technology, Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). After considering plaintiffs' arguments, we conclude that the exclusion of Mr. Marino's testimony concerning mid-rails was neither error nor an abuse of discretion.

In explaining that conclusion, we begin by explaining Mr. Marino's opinion concerning mid-rails. In his expert report, Mr. Marino stated that the following alleged deficiencies in the scaffolding caused or contributed to cause Mr. Aguirre's fall: the absence of adequate cross-bracing to secure the scaffolding, and the failure to secure the brick plates of the scaffolding frames to the "mud sills" on which they were sitting. Mr. Marino opined that Mr. Aguirre did not fall during crossing from the north side of the scaffolding to the south side of the scaffolding; rather, plaintiffs' theory – expressed in Mr. Marino's report – was that Mr. Aguirre fell only after he had completed

the crossing from the north to the south scaffold. In his deposition, Mr. Marino confirmed that the absence of a mid-rail did not contribute to cause the accident, based on how he believed the accident occurred. However, Mr. Marino opined that *if* Mr. Aguirre fell during the middle of a crossing from the north to the south scaffolding, as he thought defendants might argue, the presence of a mid-rail would have deterred such a crossing and thus the absence of a mid-rail would be a defect that contributed to cause the fall.

In deciding the motion *in limine* to bar Mr. Marino's testimony concerning the absence of a mid-rail, the Court asked whether TBMK would argue that Mr. Aguirre fell while crossing from the north scaffold to the south scaffold. TBMK stipulated that it would not make such an argument. In the absence of that argument, the Court concluded that any testimony concerning the absence of a mid-rail would be irrelevant. Accordingly, the Court barred Mr. Marino from testifying concerning the absence of a mid-rail, "based on defendant's stipulation that it will not offer evidence or argument that the fall occurred as a result of a mid-air crossing on the scaffolding" (doc. # 134).

Plaintiffs' arguments in their motion for new trial do not persuade the Court that it erred in excluding the Marino testimony concerning a mid-rail. Plaintiffs argue that because TBMK should have reasonably foreseen that the absence of a mid-rail could cause a worker to fall from a scaffold, the Court was required to allow the plaintiffs to offer evidence that the absence the mid-rail was a defect, and the jury to determine whether that was a proximate cause of the accident (Pls.' Mot. 6). We disagree.[2] As the Court explained when granting the motion *in limine*, plaintiffs offered no

---

[2]In aid of its argument, plaintiffs cite *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 349 (7th Cir. 1996), for the proposition that when the "injury-causing accident is of the kind that the defendant could reasonably foresee, proximate cause is a question for the jury," and that the jury "may consider the defendants liability in these cases, even if the arguably foreseeable accident took place for the most far-fetched reasons" (Pls.' Motion at 6). However, *Suzik* addressed the question of whether the trial judge properly granted a motion for judgment as a matter of law at the end of plaintiff's case, an issue not presented in this case. *Suzik* did not address the issue of admissibility of evidence.

8

evidence that the fall occurred while Mr. Aguirre was in the midst of crossing from the north scaffolding to the south scaffolding; under plaintiffs' own theory of the accident, evidence that a mid-rail would have prevented a fall during a mid-air crossing was irrelevant. While plaintiffs argue that Mr. Marino should have been allowed to testify that "a guardrail .. would have stopped Aguirre from falling between the two scaffolds" (Pls.' Motion at 8), Mr. Marino's report and his deposition testimony both disavowed that theory of the fall. In addition, defendants did not open the door to evidence concerning the absence of a mid-rail by offering evidence or argument that Mr. Aguirre fell during a mid-air crossing; TBMK remained true to its stipulation, and did not offer that evidence or argument.[3]

Plaintiffs offer two other theories under which they claim the absence of a mid-rail was relevant. *First*, plaintiffs argue that the testimony that Mr. Aguirre grabbed at the air as he fell from the scaffolding made the absence of a mid-rail relevant, on the ground that the presence of a mid-rail would have allowed him to grab something to avoid the fall (Pls.' Motion at 8). However, there was no testimony that Mr. Aguirre was grabbing for a mid-rail when he fell. Moreover, when Mr. Marino expressed his opinions in his report and in his deposition, he did not opine that the absence of a mid-rail would have allowed Mr. Aguirre to avoid a fall under the scenario in which Mr. Aguirre testified that the fall occurred. Allowing evidence concerning the absence of a mid-rail on this theory would not have provided a jury with relevant evidence, but rather would have invited the jury to speculate about the cause of the accident in a manner unsupported by the evidence.[4]

---

[3]We reject plaintiffs' contention (Pls.' Reply at 5-6) that TBMK raised this argument during its closing argument.

[4]The fact that Mr. Marino ascribed no causative affect to the absence of the mid-rail under his theory of how the accident occurred undermines plaintiffs' suggestion that the Court's exclusion of the evidence concerning the mid-rail was tantamount to granting summary judgment on "one of Plaintiffs' principle theories of liability" (Pls.' Motion

*Second*, plaintiffs argue that the absence of a mid-rail was relevant because, had a mid-rail been present, plaintiff "would not have attempted to cross from one scaffold to the other" (Pls.' Motion at 8). To the extent that by this argument, plaintiffs claim that the absence of a mid-rail was relevant to a theory that Mr. Aguirre suffered a fall while in the midst of crossing from the north to the south scaffold, we already have considered and rejected that argument. To the extent that by this argument, plaintiffs claim that if a mid-rail had been present Mr. Aguirre never would have found himself on the south scaffold (and thus would not have suffered a fall), that argument is inconsistent with the evidence. All the evidence at trial was that Mr. Aguirre went from the north scaffold to the south scaffold because he had work that he needed to complete on the south scaffold. Thus, even if a mid-rail would have prevented Mr. Aguirre from a mid-air crossing between the north and south scaffold, it would not have prevented him from climbing down from the north scaffold, crossing on the ground to the south scaffold, and climbing onto the south scaffold. Thus, even assuming the presence of a mid-rail would have been relevant to the way in which Mr. Aguirre crossed from the north the south scaffold, it would not have prevented him from ultimately reaching the south scaffold. And, again, the testimony at trial was that Mr. Aguirre fell from the south scaffolding after he had already crossed over to it from the north scaffolding.[5]

---

at 5). In fact, Mr. Marino's expert report and deposition testimony confirm that he considered the absence of a mid-rail relevant only to rebut a potential defense theory concerning how and where Mr. Aguirre fell, a theory that Mr. Marino himself did not accept and that TBMK did not offer at trial.

[5]In a effort to bolster this theory of relevance, plaintiffs also argue that testimony concerning the absence of a mid-rail was relevant to TBMK's affirmative defense that Mr. Aguirre was "negligent in failing to look for defects before stepping from one scaffold to another scaffold" (Pls.' Motion at 9). However, that affirmative defense would remain unchanged whether Mr. Aguirre executed a mid-air crossing between the north and south scaffolding, or instead alighted from the north scaffolding, walked across the south scaffolding, and then climbed onto the south scaffolding. The focus of TBMK's affirmative defense was not the means by which Mr. Aguirre found himself on the south scaffolding, but rather his level of attentiveness in examining the south scaffolding for any alleged defects before using it.

For all of these reasons, we reject plaintiffs' argument that the exclusion of evidence concerning the absence of mid-rails warrants a new trial.

## III.

In his expert report, Mr. Marino also expressed the opinion that TBMK was a "controlling employer" as defined by the Occupational Health and Safety Administration ("OSHA"). Prior to Mr. Marino taking the stand at trial, TBMK moved for a ruling that if Mr. Marino offered that opinion, then TBMK would be permitted to cross-examine him with an administrative opinion issued by OSHA on April 27, 2007, which invalidated prior decisions concerning the multi-employer work site doctrine that was a basis for Mr. Marino's controlling employer opinion. *Secretary of Labor v. Summit Contractors, Inc.,* OSHRC Docket No. 03-1622 (April 27, 2007). The Court granted that request. The Court ruled that if Mr. Marino testified to his opinion concerning controlling employer, then TBMK would be allowed to cross-examine him using the 2007 OSHA decision.

During trial, plaintiffs decided to refrain from asking Mr. Marino to express his opinion that TBMK was a controlling employer under OSHA. Now, in their post-trial motion, plaintiffs argue that the Court erred in ruling that TBMK would be allowed to use the OSHA decision to cross-examine Mr. Marino if he offered that opinion (Pls.' Motion at 12-13). Plaintiffs argue that TBMK's conduct must be judged by the standard of care that existed at the time of the occurrence in May 2003, and that any subsequent changes in the standard of care are inadmissible (*Id.* at 12).

However, as we read the OSHA decision, it did not recognize the validity of the pre-existing doctrine but decide nonetheless to blaze a new trail on the standard of care. Rather, the OSHA decision invalidated the multi-employer work site doctrine on the ground that it was an incorrect

11

interpretation of the law from the outset. Thus, according to that opinion, the OSHA controlling employer standard that Mr. Marino said applied in May 2003 was incorrect even at that time.

We recognize that the OSHA decision is under appellate review, and thus is subject to change. Had plaintiffs decided to ask Mr. Marino to express his controlling employer opinion under OSHA, plaintiffs would have been free to make that point with the jury, as well as to make the point that in May 2003, TBMK would have been aware of and subject to the controlling employer doctrine as it was then interpreted. However, in our judgment, it would not have been reasonable to allow Mr. Marino to express a controlling employer opinion based on OSHA regulations, without allowing TBMK to make the point that OSHA itself has now called into question that interpretation of the regulations. We conclude that there was no error in ruling that this line of cross-examination would be available if Mr. Marino offered his controlling employer opinion.

## IV.

Finally, plaintiffs argue that the Court erred with respect to the jury instructions. We have reviewed the arguments, and find no error.

*First*, plaintiffs argue that the Court erred in failing to amend the second element of the instruction of *res ipsa loquitur* (Jury Instruction No. 14), to state that plaintiffs must prove that Mr. Aguirre's injury was received from a scaffold that was under "shared control between TBMK and A.L.L." (Pls.' Motion. 13-14). Plaintiffs complain that the Court instead instructed the jury using the approved IPI language that plaintiffs must prove that the scaffold was under "the defendant's control."

We note that plaintiffs originally submitted a *res ipsa loquitur* using the very language on this point that the Court adopted (*see* Plaintiffs' Proposed Jury Instruction No. 13) – and that tracked

IPI Civil B22.01 on *res ipsa loquitur*. The comment to that pattern instruction explains Illinois' use of the word "control" in the second element of the instruction:

> The element "Second" uses the terms "control" and "management" rather than "exclusive control." The Illinois Supreme Court recognizes that it is not always necessary that the instrumentality have been in the "exclusive" control of the defendant at the relevant time. . . . The standard of control is flexible one – sufficient control, under the facts of each case, to infer that it was defendant who was responsible for the negligence, if any, that caused the injury. . . . It is not necessary that the defendant had actual physical control if defendant at all relevant times had a duty to maintain or supervise the instrumentality in question.

IPI Civil B22.01 (Comment) (omitting citations).

The commentary makes clear that the drafters of the Illinois pattern instructions gave careful attention to the manner in which a jury should be advised as to the element of "control" in a *res ipsa loquitur* case. By using the words control and management, without any modifiers such as "exclusive" or "shared," the drafters of the pattern instruction intended to allow the juries to determine, based on the evidence in a particular case, whether sufficient control was exercised to satisfy this element. We understand that parties often desire to tinker with the language of pattern instructions to better adapt (or slant) them to their theory of the case. However, we see no error in declining a proposed amendment to an Illinois pattern instruction that the framers of the instruction deemed unnecessary to convey the idea of shared control to a jury.

*Second*, plaintiffs argue that the Court erred in refusing to give Plaintiffs' Proposed Instruction No. 31, based on IPI Civil 55.04, which stated that "[o]ne or more persons may have some control over the safety of the work. Which person or persons had some control over the safety

of the work under the particular facts of this case is for you to decide" (Pls.' Motion at 14).[6] The note to IPI Civil 55.04 states that it should be given in conjunction with IPI Civil 55.03, which is an instruction used when instructing on a claim of direct negligence: not on a *res ipsa loquitur* claim. Control was not an issue on the direct negligence claim. For that reason, the Court modified IPI Instruction 55.03 to remove the element of control from that theory. Thus, there was no reason to give Plaintiffs' Proposed Instruction No. 31.

*Third*, plaintiffs quarrel with the Court's Instruction No. 21, which is IPI Civil 12.04 on concurrent negligence (Pls.' Motion at 14-15). The first sentence of the instruction states that "[m]ore than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that its negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third-person who is not a party to the suit may also have been to blame." Plaintiffs do not challenge that portion of the instruction, which they also asked the Court to give (*see* Plaintiffs' Proposed Instruction No. 11). Plaintiffs challenge the Court's inclusion of the second sentence of that instruction: "However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant."

Although plaintiffs now claim that there was "no factual basis" for the second sentence of the instruction to be given (Pls.' Motion at 15), we disagree. As the explanatory notes to IPI Civil 12.04 explain, the second sentence of the instruction should be used "where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." Here,

---

[6]Plaintiffs state that this was Proposed Plaintiffs' Instruction No. 23; we believe it was numbered as Plaintiffs' Proposed Instruction No. 31.

14

A.L.L. was not a party to the suit, but the evidence could have led the jury to conclude that it was solely responsible for the fall.

In arguing otherwise, plaintiffs conflate the element of control with the elements of negligence and proximate cause. Even while holding that control was established for the negligence claim, the Seventh Circuit cautioned that "[o]f course, this holding does not mean the defendants are liable for Aguirre's injuries; that remains a question for the jury." *Aguirre*, 501 F.3d at 831. Jury Instruction No. 20 – which plaintiffs do not challenge – told the jury that plaintiffs were required to establish that TBMK acted negligently and that its negligence was a proximate cause of Mr. Aguirre's injury. The jury reasonably could have concluded that plaintiffs failed to establish one or both of these elements, and that A.L.L.'s conduct was the sole proximate cause of the injury. We conclude that there was no error in giving this instruction.[7]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a new trial (doc. # 171) is denied.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: October 27, 2008

---

[7] Plaintiffs also argue that the jury's request for a definition of control shows the inadequacy of the instructions that were given (Pls.' Motion at 15). We disagree. To accept that proposition would lead to the conclusion that any time a jury asks a question that touches on a term use in an instruction, a court must provide fresh instructions. We reject that proposition. The pattern instructions that were given here were adequate to allow the jury to properly decide the issue of control on the *res ipsa loquitur* claim.

15